UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

RICARDO PIERRE-LOUIS,              )
                                  )
            Petitioner,            )
                                  )
      v.                           )          2:04-cr-00023-JDL
                                  )          2:20-cv-00239-JDL
                                  )
UNITED STATES OF AMERICA,          )
                                  )
            Respondent             )

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Petitioner moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence.  (Motion, ECF No. 633.)  Petitioner, who was resentenced in 2019 in accordance with the First Step Act, argues the Court improperly calculated the guideline range and that his counsel failed to file an appeal as directed. The Government asks the Court to dismiss the matter.  (Supplemental Response, ECF No. 673.)

Following a review of the record and after consideration of Petitioner's motion and the Government's request for dismissal, I recommend the Court grant the Government's request and dismiss Petitioner's motion.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**A.      Trial, Sentencing, and Appeal**

In May 2004, Petitioner and multiple codefendants were charged with conspiring to distribute and possess with intent to distribute fifty grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846.  (Criminal Complaint, ECF No. 48; Superseding Indictment, ECF No. 58; Second Superseding Indictment, ECF No. 191.)

The Government alleged Petitioner had two prior felony drug offenses, (Information, ECF No. 287), and the operative indictment included several factual allegations regarding Petitioner's conduct for purposes of sentencing, including that he was an organizer or leader in the conspiracy, possessed a firearm, and conspired to distribute at least 150 grams of cocaine base. (Information, ECF No. 287; Second Superseding Indictment at 3–4.) After a trial in November 2004, a jury found Petitioner guilty and answered in the affirmative on the sentencing-related factual questions. (Jury Verdict, ECF No. 347.)

Before sentencing, the Probation Office recommended a base offense level of thirty-six because of an estimated drug quantity of 1,080 grams of cocaine base, a two-level guideline enhancement for firearm possession, and a four-level guideline enhancement for organizing or leading the conspiracy. (Presentence Investigation Report (PSR) ¶¶ 15–22.) Because Petitioner had two prior convictions for controlled substance offenses, the career offender guideline provisions enhanced his criminal history category from V to VI. (*Id.* ¶¶ 23, 38–39.) The career offender guideline enhancement also increased the offense level to at least thirty-seven, but Petitioner's offense level did not change because the score was already more than thirty-seven. (*Id.* ¶ 23.) The guideline range would have been 360 months to life in prison, but because Petitioner's conduct involved fifty grams or more of cocaine base, and because Petitioner had two prior convictions for felony drug offenses, Petitioner was subject to a mandatory life sentence under the version of 21 U.S.C. § 841(b)(1)(A)(iii) in effect at the time of Petitioner's sentencing in March 2005. (PSR ¶¶ 13, 60–61.)

At sentencing, the Court adopted the recommendations of the Probation Office except that the Court found a lower base offense level of 34 because of a lower drug weight of 199 grams of cocaine base.  (Sentencing Transcript at 43–44, ECF No. 453.)  With a total offense level of 40 and a criminal history category of VI, the guideline range would have been 360 months to life, if not for the mandatory life sentence.  (*Id.* at 44.)  The Court sentenced Petitioner to life in prison.  (Judgment, ECF No. 400.)  Petitioner filed an appeal; the First Circuit affirmed in May 2006.  (Judgment of the First Circuit Court of Appeals, ECF No. 472.)

## B.      Postconviction Collateral Challenges

In August 2007, Petitioner filed a § 2255 motion arguing that 21 U.S.C. § 846 is unconstitutional, that his life sentence was unsupported, and that his attorney provided ineffective assistance.  (Motion, 2:07-cv-00144-GZS, ECF No. 1.)  The Court denied the motion in March 2008.  (Recommended Decision, 2:07-cv-00144-GZS, ECF No. 15; Amended Order, 2:07-cv-00144-GZS, ECF No. 20.)  Petitioner sought a certificate of appealability from the First Circuit, but the First Circuit denied the request.  (Judgment of the First Circuit Court of Appeals, 2:07-cv-00144-GZS, ECF No. 36.)

In April 2012, Petitioner filed a motion seeking review of his conviction based on the Supreme Court's decision in *Missouri v. Frye*, 566 U.S. 134 (2012).[1]  (Motion, ECF No. 538.)  The Court concluded that it was in substance a § 2255 motion and denied the

---

[1] In *Frye*, the Supreme Court held that attorneys provide ineffective assistance by failing to communicate formal plea offers from the prosecution that may be favorable to the accused.  *Id.* at 145.

motion as a second or successive petition.  (Recommended Decision, ECF No. 543; Order, ECF No. 545.)

In July 2013, Petitioner filed another motion attacking his sentence, which he styled as a Rule 60(b) motion seeking relief from the order denying his initial § 2255 motion. (Motion, ECF No. 546.)  The Court again denied the motion as a second or successive petition.  (Recommended Decision, ECF No. 556; Order, ECF No. 560.)  Petitioner sought review from the First Circuit, which denied his appeal.  (Judgment of the First Circuit Court of Appeal, ECF No. 573.)

In May 2016, Petitioner filed another motion collaterally attacking his sentence based on the Supreme Court's decisions in *Johnson v. United States*, 576 U.S. 591 (2015), and *Welch v. United States*, 578 U.S. 120 (2016).[2]  (Motion, ECF No. 577.)  The Court noted the bar on second or successive petitions and, given the new Supreme Court cases, transferred the motion to the First Circuit.  (Recommended Decision, ECF No. 579; Order, ECF No. 584.)  The First Circuit denied authorization to proceed in August 2016. (Judgment of the First Circuit Court of Appeals, ECF No. 585.)

## C.    First Step Act Relief

In March 2019, the Court appointed the Federal Defender to represent Petitioner in proceedings to consider sentencing relief pursuant to the newly enacted First Step Act of

---

[2] In *Johnson,* the Supreme Court determined that the residual clause definition of the term "violent felony" within the Armed Career Criminal Act, which provides for enhanced criminal penalties when a defendant is charged with illegal possession of a firearm after having prior convictions qualifying as violent felonies or serious drug offenses, was unconstitutionally vague.  *Johnson*, 576 U.S. at 606.  In *Welch*, the Supreme Court confirmed that *Johnson* announced a new substantive rule that had retroactive effect for cases on collateral review.  *Welch*, 578 U.S. at 135.

2018 (FSA), P.L. 115-391, and ordered the Probation Office to prepare an updated sentencing report.  (Order Appointing Counsel, ECF No. 610; Sua Sponte Order, ECF No. 611.)  In October 2019, Petitioner filed a motion to reduce his sentence pursuant to the First Step Act.  (FSA Motion, ECF No. 619.)

In relevant part, § 401 of the First Step Act reduced the duration of the § 841(b)(1) mandatory minimums and changed the category of qualifying prior convictions from a "felony drug offense" to a "serious drug felony" or a "serious violent felony."  A "serious drug felony" is defined as a specified group of controlled substance offenses under state or federal law punishable by more than ten years imprisonment for which the offender served at least twelve months in prison and was released within fifteen years of the new offense. Congress, however, did not provide that the changes would apply retroactively to sentences already imposed before the First Step Act was enacted.  *See United States v. Gonzalez*, 949 F.3d 30, 42–43 (1st Cir. 2020).

The Fair Sentencing Act of 2010, Pub L. No. 111-220, had previously raised the threshold quantities of cocaine base needed to implicate the mandatory minimum sentences in § 841(b)(1), but the changes were not applicable to sentences imposed before August 3, 2010, until the enactment of § 404 of the First Step Act in December 2018, which made the changes retroactive by permitting district courts to impose a new sentence as if the Fair Sentencing Act was in effect at the time the offense was committed.  *See United States v. Smith*, 954 F.3d 446, 446–48 (1st Cir. 2020); *United States v. Pierre*, 372 F. Supp. 3d 17, 18–20 (D.R.I. 2019).  According to the new thresholds for cocaine base from the now-retroactive Fair Sentencing Act amendments, Petitioner was no longer subject to the §

5

841(b)(1)(a) penalties and only qualified for the penalties in § 841(b)(1)(B)(iii).  Because

the § 841(b)(1)(B) penalties contained only one heightened penalty for an individual with

at least one prior conviction for a felony drug offense, the parties agreed that Petitioner's

new mandatory minimum sentence became ten years, and the statutory maximum was life

in prison.  (FSA Motion at 4; Response to FSA Motion at 2, ECF No. 623.)

In making its new recommendations to the Court in June 2019, the Probation Office

essentially followed the usual process for sentencing reductions in the wake of a retroactive

guideline amendment.  (*See* FSA PSR ¶ 2.)  Congress provided that:

> in the case of a defendant who has been sentenced to a term of imprisonment
> based on a sentencing range that has subsequently been lowered by the
> Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the
> defendant or the Director of the Bureau of Prisons, or on its own motion, the
> court may reduce the term of imprisonment, after considering the factors set
> forth in section 3553(a) to the extent that they are applicable, if such a
> reduction is consistent with applicable policy statements issued by the
> Sentencing Commission.

18 U.S.C. § 3582(c)(2).

In relevant part, the Sentencing Commission's policy statements: (1) list specific

amendments that have been made retroactively applicable, U.S.S.G. § 1B1.10(a)(1), (d);

(2) clarify that in determining an "amended guideline range . . . the court shall substitute

only the . . . listed [retroactive amendments] for the corresponding guideline provisions

that were applied when the defendant was sentenced and shall leave all other guideline

application decisions unaffected," U.S.S.G. § 1B1.10(b)(1); and (3) specify that "the court

shall not reduce the defendant's term of imprisonment . . . to a term that is less than the

minimum of the amended guideline range," unless the defendant provided substantial

assistance to the Government, U.S.S.G. § 1B1.10(b)(2)(A)–(C), (c).  The Supreme Court has held that because § 3582(c)(2) expressly limits sentencing relief to the provisions of the policy statements and does not create constitutional issues with impermissible judicial fact-finding to increase the maximum penalty for an offense, the strictures of the policy statements are not merely advisory as they are under *United States v. Booker*, 543 U.S. 220 (2005), and are instead mandatory.  *Dillon v. United States*, 560 U.S. 817, 828–31 (2010).

The Probation Office used the drug weight of 199 grams, which the Court found at the original sentencing hearing, but because the Sentencing Commission had adopted two relevant retroactive guideline amendments since the original sentencing,[3] the Probation Office recommended the Court find a reduced base offense level of twenty-eight rather than the original thirty-four.  (FSA PSR ¶ 4.)  Consistent with the process outlined in U.S.S.G. § 1B1.10(b)(1), all other recommended guideline findings remained the same, including the two-level firearm enhancement, the four-level organizer or leader enhancement, and the fact and magnitude of the § 4B1.1(b)(1) career offender enhancement.  (FSA PSR ¶¶ 5, 7, 10.)  As before, the career offender enhancement increased Petitioner's criminal history category from V to VI.  (FSA PSR ¶ 13.)  Whereas the enhancement originally had no effect on Petitioner's total offense level because his adjusted offense level of forty exceeded thirty-seven, the career offender enhancement now had the result of increasing the adjusted offense level from thirty-four to thirty-seven.  (FSA

---

[3] In relevant part, Amendment 750 reduced the guideline offense levels applicable to cocaine base offenses. Amendment 782 reduced the guideline offense levels for the given quantities of multiple drugs, including cocaine base.

PSR ¶¶ 9–12.)  With a total offense level of thirty-seven and a criminal history category of VI, Petitioner's recommended amended guideline range was 360 months to life in prison. (*Id.* ¶ 13.)

In November 2019, the Court reduced Petitioner's sentence to 300 months in prison. (Order, ECF No. 625.)

### D.    Subsequent Motions

In March 2020, Petitioner filed another motion challenging the amended guideline calculations during the sentencing relief proceedings.  (Second FSA Motion, ECF No. 627.)  Petitioner argued that the Court erred in the application of the career offender enhancement and, because of other non-retroactive statutory and guideline amendments that had occurred between 2005 and 2019, Petitioner should not have been classified as a career offender when the Court determined his amended guideline range, which he alleged should have been 262 to 293 months.  (*Id.*)  The Court construed Petitioner's filing as a motion to reconsider and denied the motion.  (Order, ECF No. 630.)  Petitioner appealed from that order, and the First Circuit affirmed.  (Notice of Appeal, ECF No. 631; Judgment of the First Circuit Court of Appeals, ECF No. 661.)

In his current motion, Petitioner raises again the arguments concerning the amended guideline calculations, and Petitioner contends that his attorney failed to file an appeal from the original resentencing order as directed.  (Motion, ECF No. 633.)

**DISCUSSION**

**A.     Legal Standards**

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

*"[P]ro se* habeas petitions normally should be construed liberally in petitioner's favor." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief.  *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978).  When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A collateral challenge is not a substitute for an appeal.  *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "[A] defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence."  *Berthoff*, 308 F.3d at 127–28.

9

Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010). The First Circuit has recognized that "federal courts have the authority to consider procedural default *sua sponte.*" *Rosenthal v. O'Brien,* 713 F.3d 676, 683 (1st Cir. 2013) (citing *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir. 1997)); *see also Daniels v. United States*, 532 U.S. 374, 382-83 (2001) (recognizing that "procedural default rules developed in the habeas corpus context apply in § 2255 cases") (citing *Frady*, 456 U.S. at 167-68).

An allegation of ineffective assistance of counsel can excuse a procedural default if the petitioner demonstrates that counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The petitioner must also demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A district court reviewing a claim of ineffective assistance of counsel need not address both prongs of the *Strickland* test because a failure to meet either prong will undermine the claim. *Id.* at 697. If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (per curiam).

Under the law of the case doctrine, "issues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994) (internal modifications and quotation marks omitted); *see also*

*Elwell v. United States*, 95 F.3d 1146, 1996 WL 516138 at *5 (1st Cir. 1996) (holding that a petitioner "is not entitled on collateral review to relitigate issues raised on direct appeal, absent an intervening change in the law"); *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004) (collecting cases and explaining limited exceptions).

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)).

Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). A court can reasonably require a petitioner to supply the court with salient details of the claim prior to permitting discovery or a hearing. *Id.* (holding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

### B.  Second or Successive

The Court lacks jurisdiction to consider a second or successive section 2255 motion unless the First Circuit has specifically authorized the Court to consider it. *Trenkler v. United States*, 536 F.3d 85, 96 (1st Cir. 2008) ("We have interpreted [section 2255(h)] as

'stripping the district court of jurisdiction over a second or successive habeas petition unless and until the court of appeals has decreed that it may go forward'") (quoting *Pratt v. United States*, 129 F.3d 54, 57 (1st Cir. 1997)).[4]  The record lacks any evidence to suggest the First Circuit has authorized Petitioner to file the current section 2255 motion.  To the contrary, the First Circuit has denied Petitioner's prior applications to file a second or successive motion.  The current motion is not barred, however, if it falls outside the meaning of a "second or successive" motion.

The Antiterrorism and Effective Death Penalty Act (AEDPA) did not define the term "second or successive petition," which is instead "a term of art" in the context of the Supreme Court's habeas corpus case law.  *Slack v. McDaniel*, 529 U.S. 473, 486 (2000).  "Not every literally second or successive § 2255 petition is second or successive for purposes of AEDPA."  *Sustache-Rivera v. United States*, 221 F.3d 8, 12 (1st Cir. 2000).  Courts have identified some situations in which a later petition from the same individual is not second or successive for purposes of AEDPA.  *Id.* at 12–13.  For example, a subsequent

---

[4] Section 2255(h) provides that:

> [a] second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain –

> > (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

> > (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

Section 2244(b)(3)(A) states: "Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."  *See also* First Circuit Rule 22.1.

12

habeas challenge is permissible when there is an intervening criminal judgment, such as one following a reversal on appeal, even if the petitioner could have raised the challenged issues under the original judgment. *See Magwood v. Patterson*, 561 U.S. 320, 339 (2010) (concluding that petitioner could not only challenge resentencing issues because it was his "first application challenging that intervening judgment," but also could challenge preexisting issues because "[a]n error made a second time" resulting in a new judgment "is still a new error"). A limited sentencing reduction, however, is generally not equivalent to a plenary resentencing and ordinarily does not result in an entirely new criminal judgment. *See, e.g.*, *Dillon*, 560 U.S. at 826 ("Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding"); *United States v. Saccoccia*, 10 F.4th 1, 10 (1st Cir. 2021) (discussing compassionate release proceedings); *Telcy v. United States*, 20 F.4th 735, 737 (11th Cir. 2021) ("a sentence reduction under the First Step Act does not constitute a new judgment and thus does not reset the habeas clock").

A petition might also avoid the second or successive label if it challenges new proceedings and therefore raises claims that were not ripe at the time of the first petition. *See, e.g.*, *Restucci v. Bender*, 599 F.3d 8, 9–10 (1st Cir. 2010) ("a claim is not 'second or successive,' and therefore is not subject to the § 2244(b) gatekeeping requirements, if the prisoner did not have an opportunity to challenge the state's conduct in a prior § 2254 petition"); *United States v. Buenrostro*, 638 F.3d 720, 725 (9th Cir. 2011) ("Prisoners may file second-in-time petitions based on events that do not occur until a first petition is concluded. A prisoner whose conviction and sentence were tested long ago may still file

petitions relating to denial of parole, revocation of a suspended sentence, and the like because such claims were not ripe for adjudication at the conclusion of the prisoner's first federal habeas proceeding"); *Walker v. Roth*, 133 F.3d 454, 455 (7th Cir. 1997) (petition was not second or successive because it was "attempting to challenge the constitutionality of a proceeding which obviously occurred after he filed, and obtained relief, in his first habeas petition").  The Government acknowledges that the second or successive bar might not apply to Petitioner's latest claims because the claims address the legality of the sentencing relief proceedings for which no review would be possible if the motion is deemed to be a successive petition.  (Supplemental Response at 4 n.3, ECF No. 673.)

Regardless of whether Petitioner's current motion is deemed to be a second or successive motion, dismissal is appropriate because each of Petitioner's discernible arguments lacks merit.

## C.    The Career Offender Guidelines

Petitioner argues the Court erred and his counsel provided ineffective assistance because they misapplied the career offender guideline provision based on the newly reduced statutory maximum penalty had he been sentenced as if the Fair Sentencing Act cocaine base quantities were in effect when he committed the offense.  Petitioner contends that under the retroactive changes from § 404 of the First Step Act, his statutory maximum penalty became forty years, which means the career offender guideline should have enhanced his offense level to thirty-four rather than thirty-seven.[5]  There is considerable

---

[5] The relevant guideline provision, U.S.S.G. § 4B1.1, provides for a different offense-level floor for different statutory maximum penalties: a statutory maximum penalty of life in prison corresponds to a

doubt whether freestanding claims of guideline errors are cognizable on collateral attack, *see Knight v. United States*, 37 F.3d 769, 773 (1st Cir.1994), but even if such claims are permitted, a petitioner presenting a "non-constitutional, non-jurisdictional claim" must show that "the claimed error of law is a fundamental defect which inherently results in a complete miscarriage of justice" and that the situation "presents exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Damon v. United States*, 732 F.3d 1, 3 (1st Cir. 2013) (quotation omitted).

As in *Damon* and *Knight*, Petitioner's freestanding guideline claim faces a procedural bar because Petitioner failed to raise the issue on appeal of the sentencing reduction.  Assuming that such a claim is possible, and assuming the procedural default could be excused by an ineffective assistance claim, the circumstances here do not constitute a miscarriage of justice and thus do not warrant relief.  Under § 404(c) of the First Step Act, a district court is not obligated to reduce a sentence even if the petitioner's crime was a covered offense.  Furthermore, in this case, the Court granted a substantial reduction and varied far below the allegedly erroneous guideline range.

To the extent Petitioner intended to raise an ineffective assistance claim to avoid the procedural default or as a basis for relief, the claim fails because Petitioner had no constitutional right to counsel during the sentencing relief proceedings.  *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in

---

minimum guideline offense level of thirty-seven; a statutory maximum penalty of twenty-five years or more corresponds to a minimum guideline offense level of thirty-four; a statutory maximum penalty of twenty years or more but less than twenty-five years corresponds to a minimum guideline offense level of thirty-two; and so on for lower statutory penalties.

state post-conviction proceedings.  Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings") (citations omitted); *United States v. Blake*, 986 F.3d 756, 758 (7th Cir. 2021) (the availability of sentencing relief in § 404 of the First Step Act "does not imply a constitutional entitlement to appointed counsel, nor does the 2018 Act supply a statutory entitlement").

Even if Petitioner could pursue the claim and could overcome the various impediments to relief, his arguments ultimately fail because his contention regarding the effect of § 404 of the First Step Act is flawed.  As the parties agreed, if Petitioner had been sentenced "as if" the Fair Sentencing Act changes were in effect at the time he committed the offense, he would have been subject to the § 841(b)(1)(B) penalties rather than the § 841(b)(1)(A) penalties.  Petitioner correctly notes that the statutory maximum penalty based on the drug quantity alone under § 841(b)(1)(B) is forty years, but given the version of § 841(b)(1)(B) that was in effect in 2005, Petitioner had at least one prior conviction for a felony drug offense and therefore would have been subject to a statutory minimum of ten years and a statutory maximum of life in prison.  Because the applicable statutory maximum would have been life in prison even if the Fair Sentencing Act had been in effect in 2005, the Court and defense counsel did not err in considering the career offender level of thirty-seven.

Petitioner's position regarding the statutory maximum penalty and the corresponding career offender level is evidently the result of the related arguments he made in his motion to reconsider the sentencing reduction order.  Petitioner argues that, because of other statutory changes in the intervening years in addition to § 404 of the First Step

16

Act, his prior convictions would no longer qualify as predicates for the enhanced § 841(b)(1)(B) penalties.  In other words, because § 401 of the First Step Act changed the label for a predicate offense from a "felony drug offense" to a "serious drug felony" and narrowed the definition of the new term relative to the old definition, Petitioner's filings can arguably be construed to argue that if he were re-sentenced in 2019 as if he were someone who committed a new offense in 2019, he (1) would not be subject to the increased § 841(b)(1)(b) statutory range for a person with a prior qualifying conviction, (2) would only have faced the statutory range of five to forty-years, and (3) would have faced a lower career offender guideline level (if the career offender guideline provision applied at all).

Just before Petitioner filed his § 2255 motion, the Supreme Court settled a split among the circuit courts and held that when adjusting a sentence pursuant to a statutory change like § 404 of the First Step Act, which does not contain language limiting the district court's sentencing discretion, a district court has broad authority to rely on other unrelated intervening legal or factual changes and must at least consider those factors when parties raise them. *Concepcion v. United States*, 597 U.S. 481, 487 (2022).  Petitioner's argument, however, does not entitle him to relief because the record reflects that neither the Court nor counsel acted contrary to the Supreme Court's ruling.

First, nothing in *Concepcion* prohibited or discouraged the Probation Office from calculating an amended guideline range based only on retroactive changes (like § 404 of the First Step Act and guideline amendments 750 and 782) without factoring in other nonretroactive changes (like § 401 of the First Step Act and other guideline amendments).

*Concepcion* only requires a court to consider other intervening changes when raised; the Supreme Court did not set a particular methodology for that consideration. The Probation Office also qualified its application of U.S.S.G. § 1B1.10, which can fairly be interpreted as raising the possibility that the Court could consider alternative guideline ranges resulting from other statutory and guideline changes. (*See, e.g.*, FSA PSR ¶ 2 ("In the event the Court determines that" the First Step Act process "encompasses application of 18 U.S.C. § 3852(c)(2) and USSG §1B1.10 . . ."), ¶ 15 ("if the Court were to consider a broader sentencing approach than permitted under 18 U.S.C. § 3582(c)(2) and USSG §1B1.10(b)" then the term of supervised release would be eight years rather than ten).)

Second, counsel urged the Court to consider the nonretroactive changes. For example, in describing the objections to its amended report, the Probation Office noted that defense counsel had argued that due to nonretroactive statutory and guideline changes, "[w]ithout the Career Offender enhancement, he would now be a 34/V with a range of 235-293. Had he not faced mandatory life and pled guilty, he would be a 31/VI, and would be at a 188 to 235." (FSA PSR at 9; *see also*, FSA Motion at 5 (based in part on "changes in the law . . . [w]e suggest the equivalent of a variance to a 34/V which has a range of 235 to 293, with a low-end sentence"), 6 n.3 (noting that at least one of the prior convictions "would not satisfy the current "serious drug felony" definition" and that "section 401 change is not retroactive, but it informs the court of Congress's current view of what is a serious drug felony").)

Finally, the most reasonable interpretation of the record is that the Court considered the other nonretroactive legal changes. The reduced sentence of 300 months was sixty

months below the calculated guideline range according to the more rigid U.S.S.G. § 1B1.10 methodology, which reduction implies that the Court correctly concluded that § 3582(c)(1)(B) and the usual advisory standards governed the FSA motion rather than the more rigid § 3582(c)(2) and U.S.S.G. § 1B1.10 standards. Although the Court did not reduce the sentence to the degree Petitioner requested, the considerable downward variance suggests that the Court not only considered but was also influenced in part by counsel's arguments regarding the other nonretroactive legal and factual changes, and thus acted in compliance with what the Supreme Court would later instruct in *Concepcion*.

In sum, even if Petitioner's arguments were cognizable through a § 2255 motion and even if he could overcome the procedural impediments, because counsel raised the issues Petitioner now asserts and because the Court considered those arguments in granting a considerable sentence reduction, the Court did not err, counsel did not perform deficiently, and Petitioner was not prejudiced by counsel's decisions.

## D.     Failure to File Appeal

Petitioner seeks an out-of-time appeal because he claims his counsel failed to file an appeal as he allegedly instructed orally after the Court reduced his sentence. His allegations can be construed as raising an ineffective assistance claim. The Supreme Court has defined trial counsel's obligation concerning a defendant's right to appeal as follows:

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000).

A defendant need not use "magic words" to "reasonably demonstrate" an interest in appealing; saying something that indicates a desire to pursue further relief that might be available is enough, but merely expressing displeasure at sentencing is insufficient to generate the duty to consult about an appeal. *Rojas-Medina v. United States*, 924 F.3d 9, 17 (1st Cir. 2019). The term "consult" in this context means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478. "If counsel has consulted with the defendant . . . [c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.*

Because a presumption of prejudice applies to a loss of the opportunity to pursue an appeal, "[a] defendant is not required to show that an appeal is likely to be successful," *Rojas-Medina*, 924 F.3d at 16, and a prior appeal waiver during a guilty plea does not destroy the presumption of prejudice if it is otherwise applicable. *Garza v. Idaho*, 139 S. Ct. 738, 742 (2019). To satisfy the prejudice inquiry in this context, therefore, a defendant only needs to "demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484.

As explained above, to the extent Petitioner intended to assert an ineffective assistance claim, that claim fails because Petitioner had no constitutional right to the assistance of counsel in connection with the FSA motion. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *United States v. Blake*, 986 F.3d 756, 758 (7th Cir. 2021).

Petitioner's ground for relief could also be construed as a motion for leave to reopen or extend the deadline to file a notice of appeal. A motion for leave to file an out-of-time appeal is subject to certain time limitations and must be supported by a finding of "good cause" or "excusable neglect" for failing to appeal timely the sentencing reduction order or the order denying the motion to reconsider. *See* 28 U.S.C. § 2107; Fed. R. App. P. 4 (a)(5), 4(a)(6).

Because there is no evidence in the record to corroborate Petitioner's allegation that counsel disregarded his oral directive to file an appeal, the record does not establish good cause or excusable neglect. Counsel provided a sworn statement denying Petitioner's allegation, and Petitioner was not denied something to which he could have plausibly believed he was entitled. To the contrary, the Court was free to deny a reduction altogether, but instead the Court granted Petitioner a significant reduction to a new sentence well below the retroactively applicable legal changes. Given all the contrary evidence in the record, including the lack of any plausible basis to appeal the discretionary sentencing relief, Petitioner cannot prevail on his unsupported allegation that counsel abandoned him after he orally directed the attorney to file an appeal.

## CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases. In addition, I recommend that the Court deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255. I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing

Section 2255 Cases because there is no substantial showing of the denial of a constitutional

right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 21st day of November, 2023.